**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4804-17T4

ROSE TAYLOR,

    Plaintiff-Appellant,

v.

THE TOWNSHIP OF EWING,
a municipal corporation of the
State of New Jersey,

    Defendant-Respondent,

and

MICHAEL MILAZZO, DAWN
MILAZZO, ROBERT SCOTT,
HOK-FAN SCOTT,
MARGARET STAHLIN, ROSALIE
TULAMELLO, KEVIN HOARN,
US BANK, NA, AS LEGAL TITLE
TRUSTEE FOR TRUMAN 2013 SC4
TITLE TRUST,

    Defendants.

_____

Argued October 10, 2019 – Decided August 7, 2020

Before Judges Nugent, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0098-15.

George T. Dougherty argued the cause for appellant (Katz & Dougherty, LLC, attorneys; George T. Dougherty, of counsel and on the briefs).

Ryan Patrick Kennedy argued the cause for respondent Township of Ewing (Stevens & Lee, PA, attorneys; Ryan Patrick Kennedy, of counsel and on the brief; Michael A. Cedrone, on the brief).

PER CURIAM

Plaintiff, Rose Taylor, appeals the summary judgment dismissal of her complaint, which alleged defendant Township of Ewing failed to abate a nuisance caused by surface water runoff that she alleges has rendered her home uninhabitable. Because plaintiff developed no evidence on the summary judgment motion record that creates a genuinely disputed issue of material fact as to the Township's liability, we affirm.

In 1973, plaintiff and her late husband purchased their property on Windybush Way in Ewing Township. Their lot was part of a subdivision described as the "Briarwood Subdivision" on the plat filed with the County Clerk. Their lot is currently designated as Block 571, Lot 16, on the Township's tax map. The lot is located at the bottom of a hill in what has been described as "bowl-shaped typography" surrounded on three sides by neighboring upland

properties on lots 8, 9, 10, 15, and 17. In her complaint, plaintiff alleged that in 2009, thirty-six years after purchasing the lot, she began experiencing water runoff and soil erosion that damaged her home's foundation and rendered the home uninhabitable.

According to a survey conducted in 1976, two easements are plotted over plaintiff's property. The first, a sewer easement, is owned and maintained by the Ewing Lawrence Sewerage Authority. The second, an underground or "subsurface" drainage easement, consisting of a catch basin and culvert pipe, is owned and maintained by the Township. The culvert pipe runs from a storm drain inlet on a nearby street, Tina Drive, across Block 571, Lots 10, 11, 12, and 16, Lot 16 being plaintiff's property. The culvert pipe leads to a storm basin on Windybush Way and to a catch basin near the bottom of the bowl-shaped topography in plaintiff's backyard.

The survey also shows that a surface-level drainage easement is located on the property of upland neighbors fronting Mountainview Road. The Township claims not to own this easement.[1] The parties dispute the ownership and maintenance of this easement.

---

[1] The maps provided in the record are unclear and difficult to read. The parties agree the surface easement exists.

A-4804-17T4

Between 2009 and 2014, upon plaintiff's request, multiple Township representatives inspected the property and ultimately reconstructed the storm drain inlet. The Township also inspected the properties of two upland neighbors but found no evidence of interference or increased storm water runoff.

In 2015, plaintiff filed a complaint against the Township seeking, among other things, injunctive relief to "restore its surface water collecting facility situated on plaintiff's land, to a functioning state and to protect it against further deterioration by reason of excessive water runoff." Plaintiff alleged that though much of the damaging surface water entering her property fell outside the Township's subsurface easement boundary, if the Township properly maintained the area, it "would abate a considerable amount of water intrusion." In subsequent amended complaints, plaintiff reiterated her claim the water trespass was a "nuisance" on her property and she claimed the Township was liable under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, for failing to fix a "dangerous condition of public property." N.J.S.A. 59:4-2.

During discovery, plaintiff hired two engineering experts. They gave similar opinions. One has since died. The other has opined that according to a 1973 drainage map the water runoff design had included "swales" to direct the surface water to the proper inlet destination. The swales on the upslope property

4

were now "absent." The expert found this was the direct cause of the water overflow to unintended parts of plaintiff's property. Although the expert determined the damage to plaintiff 's home was caused by surface water rather than ground water, he concluded the Township's failure to abate the uncontrolled water discharge onto her property led to increased hydrostatic pressure against the foundation of the home causing severe structural damage. Specifically, the expert reported:

> It is my observation that the surface water runoff pattern remains unchanged and that the opinions stated in my February 6, 2017 certification letter still hold true.
>
> Specifically, surface water runoff from the neighboring properties continues to be directed onto [plaintiff's] back and side yards. This surface water is coming from the three neighboring properties to the rear of [plaintiff's] property that slope and drain toward her property. The three adjoining properties [are] . . . tax map lots 8, 9 and 10 on block 571 respectively[]. Each of these properties slope from Mountainview Road down toward the rear property line of [plaintiff's] property, and toward the property lines of her neighbors . . . .
>
> During my March 31, 2017 inspection, I observed that the stormwater runoff from the Mountainview properties continues to flow directly over the property lines onto each of the downslope Windybush Way properties. This is due to the absence of the swales that are shown on the 1973 Briarwood Drainage Plan and on

the deed of . . . Lot 9[], and as reported by [another] engineer . . . .

I have also reviewed the reports and findings of Robert Weatherford, P.E., and they agree with my own findings and conclusions. The water infiltration, wall cracking, and wall failure of [plaintiff's] foundation walls was caused by excessive water and soil pressure bearing against these walls.

The piezometric monitoring that was performed and recorded by Mr. Weatherford showed that the local water table does not rise above the elevation of the basement slab. Therefore, the water infiltration through the foundation walls, and the failure of the walls, was caused [sic] not caused by ground water, but instead surface water.

In summary, I agree with Mr. Weatherford's conclusions that, to a reasonable degree of engineering probability, that the increasing amounts of impervious surfaces added to the Mountainview properties and the missing swales caused a surface water runoff problem that should have been addressed by Ewing Township in a timely manner.

The Township's expert agreed the damage to plaintiff's home was caused by surface water but believed the Township had properly maintained its subsurface easements. The expert also noted that though the water runoff did not flow to the intended inlet in plaintiff's yard, there was no evidence that plaintiff, as a consequence of living at the bottom of a slope, had ever attempted to mitigate the damages by re-grading her property or maintaining the swales.

6

The Township filed a motion for summary judgment. Addressing the Township's liability for failure to maintain the surface drainage easement, the court found the Township had no duty to maintain the easement or swales thereon because it never "accepted" the easement. As the Township had never accepted an easement on the surface, but the maps showed an easement did in fact exist, the court concluded plaintiff, as the benefiting estate, was the dominant estate who had the obligation to maintain it:

> In terms of the nature and scope of the easement, the [map] says, well, you can't plant anything in it other than grass. All right. And as is already stated, the owner of the easement has the obligation to maintain it, who owns it.
>
> If it's an easement without owner, then it doesn't seem to me that it's an easement at all. Here, the Township says they don't want it. [Plaintiff] says she doesn't want it. There's nobody else in the world who would want it.
>
> . . . .
>
> This easement goes along the back yard of the property, not accessible to the public. Can't say it's for the public use or that it was ever applied for public use. If you accept the argument that the reason for these drainage easements was to have swales so that they would funnel the water to the catch basin where the grate is on the ground surface to be able to carry away the water, well, the benefit of having that would be the property owner downhill, which is [plaintiff].

It's to her benefit or the property's benefit, if she -- if not the general public. So if she's the one who's the beneficiary of having these swales, then it's very easy to say that if she's a beneficiary estate, then she's the dominant estate.

And she would have the . . . obligation to maintain it. . . .

The court also rejected plaintiff's nuisance theory:

Here, it's been argued that it's a nuisance because the grading of the properties makes it so the water runs across her property. But without there being some construct like a water pipe or a swale that all of a sudden directed it there without her consent, then there isn't any nuisance by way of an ordinance.

The swale, of course, was supposed to funnel water onto her property, because that's where the catch basin was, but that's the way the property was built. That's the way the easements were on the property. So she must have consented to those swales. So the fact of those swales would not have been a nuisance.

The court found there were no genuine issues of material fact in dispute and granted the Township's summary judgment motion. Plaintiff appealed from the ensuing order.

Plaintiff presents the following argument points for our consideration:

POINT I

MOTION JUDGE COMMITTED PLAIN ERROR BY AFFIRMING RESPONDENT EWING TOWNSHIP'S RESTRICTIVE INTERPRETATION OF ITS WATER

8

NUISANCE ORDINANCE TO APPLY <u>ONLY</u> TO WATER DELIVERED ACROSS PROPERTY LINES BY PIPE OR SWALE AND NOT TO PROHIBIT WATER OVERFLOWING [FROM] DEFECTIVE STORM WATER DRAINAGE SWALES ONTO ADJACENT PROPERTIES.

POINT II

NEITHER THE LAW DIVISION'S IN LIMINE RULING AS TO THE MEANING OF EWING'S NUISANCE ORDINANCE NOR ITS SUMMARY JUDGMENT THAT EWING DOES NOT OWN THE SURFACE DRAINAGE EASEMENT, EXONERATES EWING FROM ITS COMMON LAW LIABILITY TO PLAINTIFF FOR ITS FAILURE TO ABATE AN ACTIVE, DAMAGING COMMON LAW WATER NUISANCE CAUSED OR CONTRIBUTED TO BY EWING'S NEGLIGENT MAINTENANCE AND REPAIR OF ITS ADMITTED SUBSURFACE DRAINAGE SYSTEM AND FOR ITS FAILURE TO REQUIRE THIRD PARTIES (IF NOT ITSELF) TO RESTORE THE COMPROMI[S]ED SURFACE DRAINAGE SWALE AND ITS CONNECTION TO THE CATCH BASIN ALLOWING ITS SUBSURFACE SYSTEM TO FUNCTION. THEREFORE THE LAW DIVISION COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT WITHOUT A PLENARY HEARING AS TO THE MANY DISPUTED MATERIAL FACTS AND WITHOUT SETTING FORTH THE FACTS AND LAW WHICH JUSTIFIED DOING SO.

POINT III

MOTION COURT COMMITTED REVERSIBLE ERROR BY ENTERTAINING AND GRANTING

9

EWING TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT DESPITE CLEARLY IDENTIFIED CONTESTED ISSUES OF MATERIAL FACTS BEARING ON THE COURT'S DECISION AS TO WHETHER THE BRIARWOOD SURFACE EASEMENTS <u>WERE AN INTEGRAL PART OF A SINGLE SYSTEM</u> RATHER THAN TWO SEPARATE SYSTEMS AND WHETHER EWING EVER HAD AN ACTUAL DEED OF DEDICATION, AND WHETHER EWING WAS NEGLIGENT IN ITS MANAGEMENT OF THE SUBSURFACE SYSTEM AND IN ITS RECONSTRUCTION.

POINT IV

APPELLATE DIVISION SHOULD EXERCISE ITS ORIGINAL JURISDICTION AUTHORITY TO REMEDY THE FAILURE OF THE RESPONDENT TO CALL TO THE MOTION JUDGE'S ATTENTION ORDINANCE §215-62A (10) (a) BY WHICH EWING TOWNSHIP WAS PROVIDED THE RIGHTS-OF-WAY OVER BRIARWOOD'S <u>SURFACE AND SUBSURFACE</u> STORM DRAIN EASEMENTS AND ITS REASONS FOR NOT WITHDRAWING OR EXPLAINING WHY SAID PROVISION IS NOT PERTINENT TO DETERMINING THE OWNERSHIP OF THE BRIARWOOD DRAINAGE EASEMENT RIGHTS OF WAY.

We affirm, substantially for the reasons expressed by the trial court concerning the easements for the swales on the upslope properties. We add the following brief comments.

A public entity's liability for a nuisance "is recognized [as a dangerous condition of property] under the [TCA]." <u>Russo Farms v. Bd. of Educ.</u>, 144 N.J.

84, 98 (1996) (first alteration in original) (quoting Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 593 (1982)). The controlling statute, N.J.S.A. 59:4-2, sets forth the elements a plaintiff must establish to hold a public entity liable for a "dangerous condition" of "its" property. The TCA defines "public property" as "real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." N.J.S.A. 59:4-1.

"[R]egulatory control is insufficient to establish control within the meaning of N.J.S.A. 59:4-1c." Posey ex rel. Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 183 (2002). Rather, "possessory control consistent with property law is necessary." Ibid. The element of "possessory control is satisfied where a public entity treats private property as its own by using it for public purposes." Id. at 184. In Posey, the Court held that because an "alleged integrated storm-water drainage system reasonably could be found to exist[,]" the purpose of which "was to remove excess water from public property," a goal "allegedly . . . achieved by directing the water onto private property[,]" resulting in the creation of a dangerous condition on the private property, the public entity

11

could be held liable for damages proximately caused by the dangerous condition. Id. at 185.

Plaintiff's efforts to bring the facts of the case before us within the precepts of Posey is unavailing. The swales plaintiff's expert identified as the cause of plaintiff's problems were not on public property. The facts plaintiff developed on the motion record, even when construed in a manner most favorable to her, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), do not support an inference the swales were part of the Township's integrated surface water drainage system, the purpose of the swales was to divert excess water from public property, or that excess water diverted from public property was discharged onto plaintiff's property. Summary judgment was appropriate. Ibid.

Plaintiff's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4804-17T4